# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

LISA PRIMUS,  )
 )
 )  Case No.: 26-CV-734
       Plaintiff,  )
 )
 )  **JURY TRIAL REQUESTED**
v.  )
 )
 )
ILLINOIS TOOL WORKS INC.  )
d/b/a HOBART SERVICE and ITW  )
FOOD EQUIPMENT GROUP LLC,  )
 )
      Defendants.  )

---

## COMPLAINT

---

Plaintiff, Lisa Primus ("Plaintiff" or "Primus"), by her attorneys, Stanford Law Offices, S.C., alleges to the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. The Eastern District of Wisconsin is the proper venue for this action because Primus's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b), and Defendants Illinois Tool Works Inc. d/b/a Hobart Service and ITW Food Equipment Group LLC ("Defendants") have substantial and systematic contacts in this District.

### PARTIES AND COVERAGE

3. Primus realleges and incorporates herein by reference the allegations of the preceding paragraphs.

1

4. Primus is an adult resident of the State of Wisconsin, who was employed by Defendants as the District Manager for Milwaukee/Madison from in or around January 2023 through February 24, 2025.

5. Defendant Illinois Tool Works Inc. d/b/a Hobart Service ("Hobart") is an entity registered and authorized to do business in the State of Wisconsin. Hobart is, upon information and belief, incorporated in Delaware and has its principal place of business in Illinois.

6. Defendant ITW Food Equipment Group LLC ("ITW") is an entity registered and authorized to do business in the State of Wisconsin. ITW is, upon information and belief, incorporated in Delaware and has its principal place of business in Ohio.

7. At all times set forth herein, Defendants acted by and through their agents, servants and employees.

8. During Primus's employment with Defendants, Defendants employed at least 50 employees within 75 miles of Primus's worksite.

9. During Primus's employment with Defendants, Defendants were covered employers for purposes of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

10. At the time of Primus's FMLA leave requests, as pleaded herein, Primus had been employed at Defendants for at least twelve months and had worked at least 1,250 hours during those twelve months.

11. At the time of Primus's FMLA leave requests, as pleaded herein, Primus had not exceeded the amount of FMLA leave for any FMLA leave entitlement period.

12. Primus has satisfied all administrative remedies and all conditions precedent to bringing this action.

2

**FACTS**

13.     Primus realleges and incorporates herein by reference the allegations of the preceding paragraphs.

14.     Prior to January 2023, Primus had previously worked for ITW in its Electrostatics Division.

15.     Mid-2022, ITW approached Primus and asked her to apply for the District Manager of Milwaukee/Madison position with Hobart.

16.     Primus did so and, in or around January 2023, began working for Defendants as the District Manager of Milwaukee/Madison with Hobart.

17.     Primus was immediately consumed with work. In 2023, she was so busy with work that she was only able to take one vacation day over the course of the year.

18.     In January 2024, Primus informed Regional Operations Manager Don Whitehead and Human Resources Manager Amy Mote ("Mote") that if things didn't improve, she would retire in October 2024.

19.     Mote responded to Primus and told her that Defendants did not want her to retire because she was the right person for the job. Mote asked Primus if she would stay if Defendants worked with her on improving work conditions. Primus agreed to stay and informed Mote that she really was not looking to leave, but that she simply wanted work conditions to improve.

20.     After this conversation, the work conditions about which Primus had complained improved until early July 2024 when Mote abruptly left her employment with Defendants.

21.     In or around mid-July 2024, Primus informed Human Resources that she needed to take leave under the FMLA for carpal tunnel syndrome and associated surgeries to both her right and left hands.

3

22. On or about July 25, 2024, days after Primus had indicated her intention to take FMLA leave, a colleague informed Primus that her position had been posted.

23. Primus asked her manager, Elton Johnson ("Johnson"), why her position was posted. Johnson told Primus the position was posted because Defendants "didn't know what [Primus] was planning on doing." Primus reminded Johnson that she was not retiring, as work conditions had improved and she had agreed with Human Resources that she would stay.

24. Primus thereafter contacted Human Resources, but no one returned her calls.

25. On or about August 30, 2024, Primus began approved FMLA leave for surgery to her left hand.

26. During this time, and in the year 2024, Primus's carpal tunnel surgeries required at least two (2) appointments and continuing treatment visits with, and supervision by, her health care provider(s) and/or treating physician.

27. On or about September 13, 2024, Primus was released to return to work part-time for two weeks, before returning full-time after two weeks of part-time.

28. Upon receipt of Primus's return-to-work form, Defendants informed Primus that she could not return to work part-time for two weeks before returning full-time, and that she could only return full-time. However, upon information and belief, a Hobart District Manager in Minnesota was permitted to return to work part-time, and also to work from home, after a surgery.

29. In the days following September 13, 2024, Primus's co-workers informed her that Johnson had told them that Primus was being kept on leave, that Primus was not permitted to enter the building, and that Primus's replacement had been hired.

4

30. Due to this news, Primus fell on her post-surgical hand, necessitating additional medical visits. Because she fell on her left hand, Primus also had to push back the second surgery to her right hand.

31. On or about September 18, 2024, Primus emailed Human Resources Manager Debra Kaser ("Kaser") to inquire as to the status of her position. Primus told Kaser that other employees had informed Primus that Primus's replacement had been hired. Primus reminded Kaser that Primus was not retiring, and that Defendants had agreed to work with Primus to stay.

32. Kaser responded to Primus on September 27, 2024, Primus's return-to-work full time date, and informed Primus that Defendants were honoring Primus's retirement letter. Primus again reminder Kaser that she was not retiring and had agreed with Human Resources she would stay.

33. On or about October 2, 2024, Primus contacted Johnson, as well as Human Resources employees Sarah Blakely ("Blakely") and Sonani Dube ("Dube") to discuss completing her return-to-work paperwork after her second surgery, which was changed to October 18, 2024. Blakely instructed Primus not to submit a return-to-work form unless she could return right away for full-time employment.

34. While Primus obtained a return-to-work certification with an estimated return-to-work date of December 2, 2024, she did not submit it because of Blakely's directive and given what had transpired after her prior return-to-work certification.

35. On or about November 12, 2024, Dube contacted Primus to tell her that her 12 weeks of FMLA leave had run out and asked her if she understood that her job was not protected. Neither Dube, nor any other employee of Defendants, discussed with Primus her entitlement to reinstatement to the same or an equivalent position at the expiration of the 12-week period.

5

Because of this, because Primus understood a replacement had been hired for her position and she was not permitted in the building, and because Primus had been told Defendants were honoring her retirement letter (despite her retraction, and Defendants' honoring of her retraction, of the same), she perceived this conversation as her termination.

36. On or about December 2, 2024, Primus learned her replacement, who had been hired in mid-September 2024 as pleaded above, had started.

37. On or about January 10, 2025, Primus contacted Dube to ask for her termination date. Dube responded to Primus that she had not been terminated "yet."

38. On January 26, 2025, Primus submitted a return-to-work certification permitting her to return part-time on January 27, 2025 and full-time on February 24, 2025. Contrary to her prior directive, Blakely accepted the form.

39. On February 24, 2025, Defendants formally terminated Primus's employment.

## CAUSES OF ACTION

### I. FMLA INTERFERENCE

40. Primus reasserts and incorporates all paragraphs set forth above as if restated herein.

41. Primus had consistently excelled in her role up to her FMLA leave.

42. Defendants intentionally interfered with Primus's rights by, including but not limited to, posting her position after she informed them of her intent to take FMLA-protected leave, hiring her replacement while she was on FMLA-protected leave, failing to return Primus to the same or an equivalent position as the position she held when her FMLA-protected leave commenced, and informing her while she was on FMLA-protected leave that she was not terminated "yet," in order to prevent, and/or which together prevented, her from enjoying the

6

benefits to which she was entitled, in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 et seq.

43.    As a result of Defendants' intentional FMLA violations, Primus has suffered damages in the form of lost wages, other employment benefits and insurance, and compensatory damages.

## II.    FMLA RETALIATION

44.    Primus realleges and incorporates herein by reference the allegations of the preceding paragraphs.

45.    Primus had consistently excelled in her role up to her FMLA leave.

46.    Primus was treated less favorably than other similarly situated employees who did not take FMLA leave.

47.    Defendants retaliated against Primus by taking adverse employment actions against her—namely, including but not limited to, posting her position after she informed them of her intent to take FMLA-protected leave, hiring her replacement while she was on FMLA-protected leave, refusing to permit her to return to work, and terminating her employment—because she used FMLA protected leave, and to prevent her from using prospective FMLA leave, in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq.

48.    As a result of Defendants' intentional FMLA retaliation, Primus has suffered damages in the form of lost wages and other employment benefits and insurance.

## PRAYER FOR RELIEF

WHEREFORE, Primus respectfully requests that this Court:

1.	Order Defendants to make Primus whole by providing back pay, front pay, liquidated damages, compensatory damages, pre- and post-judgment interest, and reimbursement for other benefits and expenses to be shown at trial;

2.	Grant to Primus attorneys' fees, costs, and disbursements as provided by statute; and

3.	Grant to Primus whatever other relief this Court deems just and equitable.

Dated this the 27th day of April, 2026.

Respectfully submitted,

STANFORD LAW OFFICES, S.C.

 */s/ Annie T. Stanford*
Annie T. Stanford
State Bar No. 1137501
Peter A. Stanford
State Bar No. 1004936
225 East Fairmount Avenue
Milwaukee, WI 53217
Phone: (414) 276-8269
Fax: (414) 276-2868
ATS@StanfordLawOffices.com
PAS@StanfordLawOffices.com

*Attorneys for Plaintiff*